| | |
|---|---|
| Nicholas Xanthopoulos and T. Keith Fogg,<br><br>Plaintiffs,<br><br>v.<br><br>Internal Revenue Service,<br><br>Defendant. | Case No. 19-cv-03006 (SRN/ECW)<br><br><br>**AMENDED MEMORANDUM OPINION AND ORDER**[*] |

Nicholas Xanthopoulos, 1726 Grand Ave., Apt. 3, St. Paul, MN 55105, and Tuan N. Samahon and Shawn M. Rogers, Goldstein Law Partners, LLC, 11 Church Road, Hatfield, PA 19440, for Plaintiffs.

Joseph E. Hunsader, U.S. Department of Justice, P.O. Box 227 – Ben Franklin Station, Washington, DC 20044, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter comes before the Court on Defendant Internal Revenue Service's ("IRS") Motion for Summary Judgment [Doc. No. 28] and Plaintiffs Nicholas Xanthopoulos and T. Keith Fogg's Cross Motion for Summary Judgment [Doc. No. 34]. For the reasons set forth below, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiffs' Cross Motion for Summary Judgment is **DENIED**.

## I. BACKGROUND

### A. The Parties

---

[*] This Order was amended only to correct the spelling of one of the names of the attorneys.

Plaintiff Xanthopoulos, a tax attorney, and Plaintiff Fogg, a tax law professor, jointly submitted to the IRS a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the disclosure of certain redacted portions of the Internal Revenue Manual ("IRM").[1] (Jt. Stipulation of Facts Not in Dispute ("Jt. Stip.") [Doc. No. 33] ¶ 2.)

Defendant IRS is a bureau of the U.S. Department of the Treasury and subject to the FOIA. (*See* Jt. Stip. ¶ 1.)

## B. The Relevant Portions of the Internal Revenue Manual

IRS employees are required to authenticate the identities of third-party representatives who contact the IRS on behalf of a taxpayer to request sensitive taxpayer information. (Jt. Stip. ¶ 21.) Before 2018, the IRS accomplished this by requesting and then verifying the third-party representative's Centralized Authorization File ("CAF") number. The CAF "is a computerized system of records which houses authorization information from both powers of attorney [("POA")] and tax information authorizations [("TIA")]." IRM § 21.3.7.1.1(1). The CAF "assigns a unique identifying number to the taxpayer's authorized representative(s) … or the taxpayer's appointee(s) … and maintains the data in relation to the appropriate taxpayer accounts and tax modules." IRM § 21.3.7.1.7(1). The assigned "CAF numbers" are "unique numbers" that are "different from the third-party's Taxpayer Identification Number (TIN) or Preparer Tax Identification Number (PTIN)." IRM § 21.3.7.3(1).

---

[1] The IRM is the official source of internal guidelines for IRS personnel. (Barnes Decl. [Doc. No. 30] ¶ 21; *see* IRS, *Internal Revenue Manual* (last visited May 11, 2021), https://www.irs.gov/irm.)

However, in January 2018, the IRS changed its authentication procedures. In addition to the information it previously requested, the IRS now generally requires third-party representatives to provide their own Social Security Numbers to the IRS for authentication when third-parties contact the IRS on behalf of a taxpayer. (*See* Barnes Decl., Ex. F at 9 (noting this change).)

Section 21.1.3.3 of the IRM governs this authentication process, and this action centers on the redacted portions of text within this Section. Under § 21.1.3.3(1), IRS personnel must "complete the appropriate research" when responding to a third-party who represents that they have a third-party authorization on file. For third-parties who claim to have a POA or TIA, the IRM directs IRS personnel to research the CAF "before providing any tax account information." *See* IRM § 21.1.3.3(1).

Section 21.1.3.3(2) then provides that "[t]o verify that the caller is an authorized third party of the taxpayer, research the CAF." IRM § 21.1.3.3(2). "In order to research the CAF, you need the following information: Taxpayer's Name; Taxpayer's TIN; Third Party's Name; Third Party's Number (also known as: Rep number, CAF number) see (11) below for exception; Tax Period(s) in Question; and Tax Form(s) in Question." *Id.*

Section 21.1.3.3(3) then explains that, "to combat identity theft, the IRS is requesting some personal information, in addition to the CAF number, from tax professionals. The purpose is to confirm the identification of the person calling prior to

releasing sensitive information. The intent is to enhance protections for tax professionals and their clients." IRM § 21.1.3.3(3).[2]

The IRS has redacted most of the rest of § 21.1.3.3(3). (*See* Jt. Stip., Ex. F.) In addition, six other portions of text were redacted under subsections (4), (5), (6), and (8). (*See id.*)[3]

### C. Plaintiffs' FOIA Request and IRS's Review of the Request

Plaintiffs sought to discover what the IRS had redacted under IRM § 21.1.3.3 through a FOIA request. On June 19, 2019, Plaintiffs submitted their FOIA request to the IRS, requesting, *inter alia*, "[a]n unredacted version of § 21.1.3.3 of the current Internal Revenue Manual ("IRM")." (Jt. Stip. ¶ 2; *see id.*, Ex. A.) On July 23, 2019, the IRS issued an initial response to Plaintiffs' FOIA request, stating that it would be unable to provide the requested information by the 20-day statutory deadline. (*Id.*, Ex. B.) Then, on August 29, 2019, the IRS issued a final response to Plaintiffs' FOIA request, denying Plaintiffs' request for an unredacted version of IRM § 21.1.3.3. (*Id.*, Ex. C.) The IRS advised that it was continuing to withhold the redacted portions of IRM § 21.1.3.3 under 5 U.S.C. § 552(b)(7)(E) ("Exemption 7(E)"), which exempts from disclosure certain records compiled for law enforcement purposes. (*Id.*)

---

[2] IRS employees must request information to verify the identity of the third-party taxpayer representative when the representative contacts the IRS, even if the IRS has not already initiated a civil or criminal enforcement action against the taxpayer or tax representative. (Jt. Stip. ¶ 29.)

[3] As discussed *infra*, the IRS has since disclosed two of the seven previously redacted portions of the text.

On October 1, 2019, Plaintiffs timely filed an administrative appeal of the IRS's denial of their FOIA request. (*Id.*, Ex. D; *see id.* ¶¶ 9-10.) The IRS denied Plaintiffs' appeal on October 25, 2019. (*Id.*, Ex. E.)

### D. IRM Revisions, Record Releases, and Text Still Redacted

The IRS has revised IRM § 21.1.3.3 several times since Plaintiffs submitted their initial FOIA request. (*Compare* Jt. Stip., Ex. F (effective as of March 4, 2019, before Plaintiffs submitted their initial FOIA request), *with* Ex. G (effective as of March 11, 2020), *and* Ex. I (effective as of July 9, 2020).) In the revised March 2020 version of § 21.1.3.3, the IRS publicly disclosed two sections of the text that it had previously redacted. (*See id.*, Ex. H (showing in red text the previously redacted material).) First, the IRS released the second half of the first paragraph under § 21.1.3.3(3). It provides that:

> After establishing the third party authorization is valid for the account, you must validate the POA/TIA by performing an abbreviated authentication process on the caller's SSN following procedures in paragraph 5, (a) and (d) in the IRM 21.1.3.2.3, Required Taxpayer Authentication. The POA/TIA must pass authentication on their SSN to be validated as an authorized third party.

(*Id.*, Ex. G.) Second, it released the entirety of § 21.1.3.3(6), which provides that "[u]nprocessed authorizations containing a CAF number received via fax or in person will also need to be manually researched for CAF status. See paragraph 7 below." (*Id.*) After these disclosures, the IRS again revised IRM § 21.1.3.3, effective as of July 9, 2020, but this round of revisions resulted in neither additional redactions nor additional disclosures. (*See id.*, Ex. I.)

Consequently, after the IRS's various revisions and disclosures, five redactions remain in IRM § 21.1.3.3: (1) a "note" under § 21.1.3.3(3); (2) an "exception" under § 21.1.3.3(3); (3) all of § 21.1.3.3(4); (4) all of § 21.1.3.3(5)[4]; and (5) approximately two lines of text under § 21.1.3.3(8). (*See* Jt. Stip., Exs. G, H, I.) These are the redactions that Plaintiffs dispute.

## II. PROCEDURAL HISTORY

On November 29, 2019, Plaintiffs filed their complaint in the instant action, alleging that the IRS is improperly withholding the redacted portions of IRM § 21.1.3.3 under FOIA Exemption 7(E), in violation of 5 U.S.C. § 552(a)(4)(B). (*See* Compl. [Doc. No. 1] ¶¶ 54-64.) Plaintiffs request an order requiring the IRS to produce the redacted portions of IRM § 21.1.3.3, as well as an award of attorney's fees and costs under 5 U.S.C. § 552(a)(4)(E). (*See id.*, Request for Relief.)

## III. DISCUSSION

### A. Legal Standard for Review of FOIA Agency Decisions at Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In the FOIA context, district courts have jurisdiction to enjoin an agency from withholding agency records and order production of any agency records

---

[4] A "note" following § 21.1.3.3(5) provides that "[w]hen an account is not marked with one of the indicators above and IRS personnel become aware of potentially fraudulent or suspicious CAF activity through taxpayer contact or during their normal duties, see IRM [§] 21.3.7.5.5.3, *How to report a Compromised or Potentially Compromised CAF Number*."

improperly withheld. 5 U.S.C. § 552(a)(4)(B). District courts review agencies' decisions to withhold records *de novo*, and the agency bears the burden of sustaining its action. *Id.* Indeed, "[a] government agency is not entitled to summary judgment in a FOIA case unless 'the agency proves that it has fully discharged its obligations under FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester.'" *Argus Leader Media v. U.S. Dep't of Agric.*, 740 F.3d 1172, 1175 (8th Cir. 2014) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382 (8th Cir. 1985)). To meet its burden, the agency "must prove that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Id.* (quoting *Miller*, 779 F.2d at 1382-83). Even when the requester and agency both move for summary judgment, the agency continues to bear the burden of proving that a particular FOIA exemption applies. *See Pub. Citizen Health Rsch. Grp. v. Food & Drug Admin.*, 185 F.3d 898, 904 (D.C. Cir. 1999) ("Even when the requester files a motion for summary judgment, the Government 'ultimately [has] the onus of proving that the [documents] are exempt from disclosure.'" (quoting *National Ass'n of Gov't Employees v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978))). The requester's burden "is merely 'to establish the absence of material factual issues before a summary disposition of the case could permissibly occur.'" *Id.* (citing *Campbell*, 593 F.2d at 1027).

Generally, an agency may demonstrate "the applicability of a FOIA exemption by providing affidavits regarding the claimed exemptions." *Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) (citing *ACLU v. U.S. Dep't of Def.*, 628 F.3d 612, 619 (D.C.

Cir. 2011)). "If an agency's affidavit describes the justifications for withholding the information with specific detail, demonstrates that the information withheld logically falls within the claimed exemption, and is not contradicted by contrary evidence in the record or by evidence of the agency's bad faith, then summary judgment is warranted on the basis of the affidavit alone." *Id.* (quoting *ACLU*, 628 F.3d at 619).

The FOIA provides that district courts "may examine the contents of agency records in camera." 5 U.S.C. § 552(a)(4)(B). This provision is "discretionary by its terms, and is designed to be invoked when the issue before the District Court could not otherwise be resolved; it thus does not mandate that the documents be individually examined in every case." *Peltier v. FBI*, 563 F.3d 754, 759 (8th Cir. 2009) (quoting *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 224 (1978)). In general, *in camera* inspection is disfavored and should be limited because "it is contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence openly produced in court." *Id.* (quoting *Cox v. U.S. Dep't of Just.*, 576 F.2d 1302, 1311 (8th Cir. 1978)). The district court's "primary role" is "to review the adequacy of the affidavits and other evidence presented by the Government in support of its position, utilizing in camera examination of the [documents] as an aid in determining whether the government's affidavits are accurate and made in good faith." *Id.* (quoting *Cox*, 576 F.2d at 1311). Further, the Eighth Circuit has counseled that:

> If the Government fairly describes the content of the material withheld and adequately states its grounds for nondisclosure, and if those grounds are reasonable and consistent with the applicable law, the district court should uphold the Government's position. The court is entitled to accept the

credibility of the affidavits, so long as it has no reason to question the good faith of the agency.

*Barney v. Internal Rev. Serv.*, 618 F.2d 1268, 1272 (8th Cir. 1980) (quoting *Cox*, 576 F.2d at 1311).

## B. Summary of the FOIA

Congress enacted the FOIA to "establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 136 (1975) (internal citation omitted). Accordingly, the FOIA requires the government to disclose responsive documents upon request, unless they fall within one of nine exemptions. 5 U.S.C. § 552(a); *Milner v. Dep't of the Navy*, 562 U.S. 562, 565 (2011). These exemptions are "explicitly made exclusive" and must be "narrowly construed." *Milner*, 562 U.S. at 565 (internal quotation marks and citations omitted).

Here, only FOIA Exemption 7(E) is at issue. This exemption covers:

records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]

5 U.S.C. § 552(b)(7)(E). For Exemption 7(E) to apply, an agency must first show that the records at issue were "compiled for law enforcement purposes." *Id.* Then, the agency must prove that the records (1) would disclose "techniques and procedures" for law enforcement investigations or prosecutions, or (2) would disclose "guidelines" for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.[5]

### C. Applicability of Exemption 7(E)

At the outset, the Court notes several issues that are not in dispute. First, Plaintiffs do not challenge the reasonableness of the IRS's search for responsive records. (*See* Jt. Stip. ¶ 13.) In addition, the parties agree that the redacted portions of the IRM constitute "agency records" within the meaning of the FOIA and that the IRS "withheld" these records. *See Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 150 (1980) (noting that courts grant relief under FOIA "upon a showing an agency has (1) 'improperly'; (2) 'withheld'; (3) 'agency records'"); *see also* Jt. Stip. ¶¶ 1-12. Consequently, the only issue before the Court is whether the IRS "improperly" withheld the redacted portions of the IRM, which, in turn, depends on whether the IRS properly invoked Exemption 7(E) as the basis for such redactions. To answer this question, the Court considers the following issues in turn: (1) whether the redacted portions of IRM § 21.1.3.3 were "compiled for law enforcement purposes"; (2) whether they reveal "techniques and procedures" for law enforcement investigations or prosecutions; and (3) whether disclosure could reasonably be expected to risk circumvention of the law.[6]

---

[5] The Court notes that courts are divided as to whether an agency must show an "expected risk of circumvention of the law" when the agency determines that disclosing the records at issue would reveal "techniques and procedures" for law enforcement investigations or prosecutions. *See infra* Section C.3.

[6] The IRS does not contend that any of the redacted records constitute "guidelines" under Exemption 7(E). Consequently, the Court does not consider whether the redacted records fall under that part of Exemption 7(E).

1. **Whether the Records Were "Compiled for Law Enforcement Purposes"**

The FOIA requires agencies to disclose "administrative staff manuals and instructions to staff that affect a member of the public," 5 U.S.C. § 552(a)(2)(C), but agencies may withhold "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), to the extent those records fall within one of Exemption 7's subclauses. The Eighth Circuit has noted that the "distinction between law enforcement matters and administrative matters is not easily drawn." *Cox*, 576 F.2d at 1307.

Law enforcement is "the process by which a society secures compliance with its duly adopted rules." *Id.* (quoting *Hawkes v. Internal Rev. Serv.*, 467 F.2d 787 (6th Cir. 1972)). Under Exemption 7, "law enforcement purposes" include both criminal and civil matters within an agency's scope. *Tax Analysts v. Internal Rev. Serv.*, 294 F.3d 71, 77 (D.C. Cir. 2002). Moreover, "law enforcement purposes" include "proactive steps" designed to prevent criminal activity and to maintain security. *Milner v. Dep't of the Navy*, 562 U.S. 562, 582 (2011) (Alito, J., concurring). A growing chorus of courts have agreed that "proactive steps" can satisfy Exemption 7's threshold requirement. *See, e.g.*, *Sack v. U.S. Dep't of Def.*, 823 F.3d 687, 694 (D.C. Cir. 2016); *Jordan v. U.S. Dep't of Just.*, 668 F.3d 1188, 1193 (10th Cir. 2011); *Knight First Amendment Inst. v. U.S. Dep't of Homeland Sec.*, 407 F. Supp. 3d 334, 350 (S.D.N.Y. 2019); *Brennan Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 74, 97 (S.D.N.Y. 2018).

Agencies whose "principal function" is law enforcement, such as the FBI, and agencies that have both law enforcement and administrative functions, such as the IRS,

may both properly invoke Exemption 7. *Tax Analysts*, 294 F.3d at 77.[7] When analyzing whether a "mixed function" agency like the IRS properly invoked Exemption 7, courts "must scrutinize with some skepticism" the specific purpose that the agency cites because, "without thoughtful consideration, the excessive withholding of agency records which Congress denounced and sought to avoid … might well result." *Id.* (citation omitted).

Plaintiffs contend that the IRS fails to establish that the redacted portions of IRM § 21.1.3.3 were compiled for law enforcement purposes for several reasons. First, they contend that the unredacted portions of § 21.1.3.3 reveal that the section has an administrative, rather than law enforcement, purpose. (Pls.' Mem. in Support of Mot. for Summ. J. and in Opp'n to Def.'s Mot. for Summ. J. ("Pls.' Mem.") [Doc. No. 44] at 12.) In support, it points to the statement under § 21.1.3.3(3) that "[t]he purpose is to confirm the identification of the person calling prior to releasing sensitive information." Second, they assert that the provisions of the IRM that the IRS released during the course of this litigation did not reveal a law enforcement technique. (*Id.* at 13.) Third, they contend that the location of the redacted portions in § 21.1.3.3 is inconsistent with the position that they were compiled for law enforcement purposes. (*Id.*) Specifically, they note that the redactions fall under a section entitled "Third Party Authentication" within Part 21, entitled "Customer Account Services," rather than Parts such as Part 5 ("Collecting Process") or Part 38 ("Criminal Tax"). (*Id.*) Fourth, they assert that the IRS must show that the redacted

---

[7] The parties agree that the IRS has both administrative and law enforcement functions. (Jt. Stip. ¶ 20.) And the Court, too, agrees that the IRS plainly has both functions. *Accord Tax Analysts*, 294 F.3d at 77.

records relate to law enforcement within its own legal authority and that it has not done so. (*Id.* at 13-15.)

In response, the IRS contends that the redacted materials were compiled for law enforcement purposes because they describe investigatory steps that the IRS takes in specific circumstances to authenticate a purported POA or TIA. (Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") [Doc. No. 29] at 11.) It emphasizes that "law enforcement purposes" under Exemption 7 include efforts to prevent future wrongful conduct, and so IRM § 21.1.3.3, including the redacted material, is in fact "compiled for law enforcement purposes" because it "sets forth techniques and procedures to <u>prevent</u> nefarious impersonators from obtaining and then fraudulently exploiting sensitive taxpayer information." (Def.'s Reply in Supp. of Mot. for Summ. J. and in Opp'n to Pls.' Mot. for Summ. J. ("Def.'s Reply") [Doc. No. 51] at 8 (emphasis in original).) It notes that § 21.1.3.3 expressly articulates its purpose in preventing identity theft. (*Id.* at 12; *see* IRM § 21.1.3.3(3) ("As part of an ongoing effort to combat identity theft ….").)

Moreover, the IRS contends that § 21.1.3.3 serves another law enforcement purpose: it ensures that the IRS does not violate 26 U.S.C. § 6103. (*Id.* at 9.) Under 26 U.S.C. § 6103(a), the IRS is required to keep taxpayers' returns and return information confidential. However, the IRS may disclose such information to third-parties if the taxpayer consents to the disclosure. 26 U.S.C. § 6103(c). According to the IRS, § 21.1.3.3 protects taxpayers' return information and privacy rights during communications that the IRS has with purported POAs and TIAs, and it helps to ensure that IRS employees do not violate § 6103. (*Id.* at 12-13.)

Based on the evidence before the Court, the IRS has shown that the redacted portions of IRM § 21.1.3.3 were "compiled for law enforcement purposes." The IRS's redacted authentication procedures are "proactive steps" designed to prevent identity theft and maintain the security of taxpayers' confidential information, as 26 U.S.C. § 6103 requires of it. *See Milner*, 562 U.S. at 582 (Alito, J., concurring). Indeed, the Barnes Declaration specifically explains that identity theft and related fraud are significant problems at the IRS. (Barnes Decl. ¶¶ 13, 17.) She also explains that the five redactions at issue describe "specialty situations" in which the IRS uses "unique" authentication techniques and procedures. (*Id.* ¶¶ 35-36.) And these "unique" procedures are used to combat the unauthorized disclosure of sensitive taxpayer information, identity theft, and criminal fraud. (*Id.* ¶ 37.)

Plaintiffs' arguments to the contrary are unpersuasive. First, Plaintiffs paint § 21.1.3.3 with too broad a brush when they argue that § 21.1.3.3 explicitly discloses an administrative purpose. It is true that § 21.1.3.3 in part serves an administrative purpose. (*See* Pls.' Mem. at 12; *see also* IRM § 21.1.3.3(3) ("The purpose is to confirm the identification of the person calling prior to releasing sensitive information.") .) But the text of § 21.1.3.3 also reveals that it serves a law enforcement purpose as well. (*See* IRM § 21.1.3.3(3) (noting other purposes "to combat identity theft" and "to enhance protections for tax professionals and their clients").) And some parts of the provision may serve both administrative and law enforcement purposes. *See Milner*, 562 U.S. at 582 (Alito, J., concurring) ("Documents compiled for multiple purposes are not necessarily deprived of Exemption 7's protection."). Plaintiffs even acknowledge that it serves a law enforcement

purpose. (*See* Pls.' Mem. at 13 ("Plaintiffs acknowledge that in the course of authenticating individuals, the IRS encounters the occasional identity thieving fox who attempts to break into the chicken coop.").)

Second, even if Plaintiffs are correct that the portions of the IRM that the IRS released after litigation commenced did not have a law enforcement purpose, the question remains as to whether the redacted portions still at issue have a law enforcement purpose. In fact, the actions of the IRS show that the IRS was taking care in segregating records that should be disclosed and those that should not.

Third, the location of the redacted portions in § 21.1.3.3 within the IRM is not dispositive of the issue. It is entirely reasonable that a section of the IRM relating to third party authentication might have a law enforcement purpose.

Fourth, and finally, Plaintiffs contend that § 6103 does not furnish the IRS with a law enforcement purpose because it only forbids government officials from improperly accessing or sharing taxpayers' sensitive information. (*See* Pls.' Mem. at 14-15.) In support, they point to *Bartko v. United States Dep't of Just.*, 898 F.3d 51 (D.C. Cir. 2018). In *Bartko*, the FOIA requester sought records from the DOJ's Office of Professional Responsibility ("OPR") regarding any investigations that OPR had undertaken into alleged ethics violations by an Assistant U.S. Attorney ("AUSA") who had previously prosecuted the FOIA requester. *Id.* at 64. In ruling that the government had not shown that Exemption

7(C)[8] applied, the court noted that "[r]ecords documenting only government surveillance or oversight of the performance of duties of its employees do not qualify" as records compiled for law enforcement purposes. *Id.* (citations and internal quotation marks omitted). It further noted that "the mere possibility of a legal violation [is not] sufficient, because [a]ny internal auditing or monitoring conceivably could result in disciplinary action, in dismissal, or indeed in criminal charges against the employees." *Id.* (citations and internal quotation marks omitted).

This Court agrees that "[r]ecords documenting only government surveillance or oversight of the performance of duties of its employees" generally are not compiled for law enforcement purposes in the context of Exemption 7. *See Bartko*, 898 F.3d at 64. The portions of the IRM at issue in this case, however, do not "only" relate to governmental oversight of employees' duties. As the IRS has explained, in addition to ensuring employees do not violate § 6103, the redacted portions have another purpose: to combat and prevent identity theft in "specialty" circumstances. (*See* Def.'s Reply at 7-13; *see also Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("Under the text of Exemption 7, the withheld record must have been compiled for law enforcement *purposes*; the withholding agency need not have statutory law enforcement *functions*." (citing 5 U.S.C. § 552(b)(7))).) Plaintiffs do not

---

[8] Exemption 7(C) protects from disclosure "records or information compiled for law enforcement purposes" that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

appear to respond to this point. And as noted above, Plaintiffs acknowledge the law enforcement goal of combatting identity theft. (*See* Pls.' Mem. at 13.)

Accordingly, the IRS has established that the redacted materials were "compiled for law enforcement purposes."

> **2.** **Whether the Records Reveal Techniques and Procedures for Law Enforcement Investigations or Prosecutions**

The IRS contends that the records at issue reveal techniques and procedures utilized in law enforcement investigations. Notably, Exemption 7(E) applies "even when the [requested] materials have not been compiled in the course of a specific investigation[,]" but rather compiled in the course of the agency's general investigative function. *Tax Analysts*, 294 F.3d at 79.

According to Plaintiffs, the redacted materials do not reveal techniques or procedures for law enforcement investigations for several reasons. First, they argue that the redacted material cannot fall within Exemption 7(E) because authentication is an administrative process, rather than an investigatory or prosecutorial one. (Pls.' Mem. at 17-20.) In support, they argue that the unredacted records show that the IRS does not use IRM § 21.1.3.3 to facilitate previously initiated investigations or proceedings. They also assert that, unlike an investigation or prosecution, every third-party who calls the IRS is subject to the procedures in § 21.1.3.3.

Next, they argue that the structure of the IRM reveals that the redacted material does not fall within Exemption 7(E) because the redacted material is not located in parts of the IRM that detail how IRS personnel are to conduct criminal and civil investigations. (*Id.* at

20-24.) Further, they argue that the redacted materials merely detail "information-gathering activities" that are designed to generate leads, rather than serve as techniques or procedures for law enforcement. (*Id.* at 24-28.) Next, they contend that authentication procedures are unlike classic law enforcement methods that have been held to fall within Exemption 7(E). (*Id.* at 28-30.) Finally, Plaintiffs argue that, even if the Court accepts that the redacted materials reveal techniques and procedures used for law enforcement investigations, they nevertheless cannot receive protection under Exemption 7(E) because authentication is a tool well-known to the public and therefore does not qualify for protection. (*Id.* at 30-33.)

In response, the IRS contends that the redacted material would reveal techniques and procedures for law enforcement investigations because the IRS uses them for that purpose—to prevent fraudulent exploitation of its POA and TIA procedures. (Def.'s Mem. at 13-20.)

Throughout their briefing, Plaintiffs repeatedly argue that the IRS is attempting to shield a routine administrative authentication process that applies to all third-parties who contact the IRS. (*See, e.g.*, Pls.' Reply in Supp. of Mot. for Summ. J. ("Pls.' Reply") [Doc. No. 53] at 16-18.) The evidence shows, however, that this is not the case. Indeed, the IRS appears to have disclosed the general authentication procedures that apply in the ordinary case. (*See* Jt. Stip., Ex. G at 1-3.) However, according to the Barnes Declaration, upon learning that a caller falls into a "specialty" situation, the IRS utilizes specific procedures to investigate whether that caller is engaging in wrongful conduct. And it is these investigative techniques and procedures—that are only triggered when the IRS learns that

a particular caller falls into a "specialty" circumstance—that the IRS has withheld. (*See* Barnes Decl. ¶¶ 35-37.)

Plaintiffs also contend that the redacted authentication procedures are merely "information-gathering activities" designed to generate leads, instead of techniques for conducting investigations. (Pls.' Mem. at 24-28.) However, as the IRS notes, (*see* Def.'s Reply at 14-15), an "investigation" can include "developing leads," and gathering information about a particular person to determine whether that person is violating the law can qualify as an investigation. *Cf. Birch v. U.S. Postal Serv.*, 803 F.2d 1206, 1210 n.40 (D.C. Cir. 1986) ("[W]here the inquiry departs from the routine and focuses with special intensity upon a particular party, an investigation is under way." (citation omitted)).

Finally, Plaintiffs contend that, even if the Court accepts that authentication is a technique or procedure, Exemption 7(E) nevertheless does not apply because authentication is a concept well-known to the public. (Pls.' Mem. at 30-33.) Courts generally agree that Exemption 7(E) does not shield from disclosure law enforcement techniques or procedures that are universally known to the public. *See Broward Bulldog, Inc. v. U.S. Dep't of Just.*, 939 F.3d 1164, 1191 (11th Cir. 2019) (collecting cases). Consequently, courts have held that well-known techniques and procedures like "wiretapping," *Albuquerque Pub. Co. v. U.S. Dep't of Justice*, 726 F. Supp. 851, 857-58 (D.D.C. 1989), and "fingerprinting," *Cox*, 576 F.2d at 1310, are not entitled to protection under Exemption 7(E). However, "even for well-known techniques or procedures, Exemption 7(E) protects information that would reveal facts about such techniques or their usefulness that are not generally known to the public, as well as other information when

disclosure could reduce the effectiveness of such techniques." *Broward Bulldog, Inc.*, 939 F.3d at 1191 (citing *Vazquez v. U.S. Dep't of Justice*, 887 F. Supp. 2d 114, 116-17 (D.D.C. 2012)).

Based on the evidence before the Court, the redactions at issue appear to disclose techniques not generally known and information that, if widely known, could reduce the techniques' effectiveness. As the IRS's Barnes has noted, the IRS utilizes "unique" techniques and procedures to investigate specific callers who fall within "specialty" circumstances, to better enforce the law and prevent wrongdoing. (Barnes Decl. ¶¶ 35-37.) And if disclosed publicly, third-party wrongdoers would know how the IRS handles certain authentication situations and, consequently, would know "which circumstances might be easier for them to exploit." (*Id.* ¶ 36.) Moreover, the IRS was charged with implementing new policies to combat identity theft and related fraud, and IRM § 21.1.3.3(3) expressly identifies those goals, among others. (*See id.* ¶¶ 13-19.) Accordingly, the Court is persuaded that the five limited redactions at issue would reveal techniques and procedures utilized for law enforcement investigations.

### 3. Whether Disclosure Could Reasonably Be Expected to Risk Circumvention of the Law

Exemption 7(E) covers "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information … would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions *if such disclosure could reasonably be expected to risk*

*circumvention of the law*." 5 U.S.C. § 552(b)(7)(E) (emphasis added). The Court first notes that courts are divided as to whether the phrase "if such disclosure could reasonably be expected to risk circumvention of the law" modifies only "guidelines" or if it also modifies "techniques and procedures." *Compare Pub. Emps. for Env't Resp. v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 (D.C. Cir. 2014) (identifying this split in authority and explaining that the D.C. Circuit has applied the phrase to both "guidelines" and "techniques and procedures"), *with Allard K. Lowenstein Intern. Human Rights Proj. v. U.S. Dep't of Homeland Sec.*, 626 F.3d 678 (2nd Cir. 2010) (finding that the phrase only applies to "guidelines"). Nevertheless, the requirement in Exemption 7(E) that disclosure could reasonably be expected to risk circumvention of the law "sets a relatively low bar for the agency to justify withholding." *Pub. Emps. for Env't Resp.*, 740 F.3d at 205 (quoting *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). To surpass this low bar, an agency must show that release of a document might increase the risk "that a law will be violated or that past violators will escape legal consequences." *Id.* (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).

In 2016, the FOIA Improvement Act of 2016 was enacted, amending the FOIA in various ways. *See* Pub. L. No. 114-185, 130 Stat. 538. As relevant here, the FOIA now provides that an agency is required to withhold information only if "the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)," or "disclosure is prohibited by law." *See* 5 U.S.C. § 552(a)(8)(A)(i)(I)-(II). According to one court, "FOIA now requires that an agency release a record—even if it falls within a FOIA exemption—if releasing the record would not reasonably harm an

exemption-protected interest and if its disclosure is not prohibited by law." *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105-06 (D.D.C. 2019) (citations and internal quotations marks omitted).

This Court acknowledges that since the FOIA Improvement Act was enacted, there has been a debate about what showing the government must make under § 552(a)(8)(A)(i)(I). *Am. Ctr. for L. & Just. v. U.S. Nat'l Sec. Agency*, 474 F. Supp. 3d 109, 136 (D.D.C. 2020). FOIA requesters often argue that § 552(a)(8)(A)(i)(I) requires a heightened showing, while the government often responds that it did not alter the government's burden. *See, e.g.*, *id.*; *Cause of Action Inst. v. U.S. Dep't of Just.*, 330 F. Supp. 3d 336, 354-55 (D.D.C. 2018).

Here, Plaintiffs argue that the FOIA Improvement Act imposed a "heightened standard" on the IRS, requiring it to show that disclosure would reasonably harm an exemption-protected interest in addition to showing that disclosure could risk circumvention of the law. (Pls.' Mem. at 34-40.) In the IRS's view, however, the FOIA Improvement Act did not change its burden of proof. (Def.'s Reply at 21-22.)

The Court need not resolve this issue because the IRS prevails in any event. First, the IRS has shown that disclosure could reasonably be expected to risk circumvention of the law in the form of identity theft, unauthorized disclosure of taxpayer information, and fraud. (*See* Barnes Decl. ¶ 37.) Second, the Barnes Declaration provides a reasonable basis to believe that disclosing the withheld materials would harm interests that Exemption 7(E) aims to protect, such as preserving the effectiveness of techniques and procedures for law enforcement investigations.

### D. *In Camera* Review

In Plaintiffs' Reply, they request that the Court conduct an *in camera* review of the redacted portions of text at issue in this case. (*See* Pls.' Reply at 4-16.) As noted above, although district courts may review *in camera* the materials at issue in a FOIA case, *in camera* review is disfavored and "should be limited" because "it is contrary to the traditional judicial role of deciding issues in an adversarial context upon evidence produced openly in court." *Peltier v. FBI*, 563 F.3d 754, 759 (8th Cir. 2009) (citing *Cox v. U.S. Dep't of Just.*, 576 F.2d 1302, 1311 (8th Cir. 1978)). The "primary role" of the district court is "to review the adequacy of the affidavits and other evidence presented by the Government in support of its position, utilizing in camera examination of the [documents] as an aid in determining whether the government's affidavits are accurate and made in good faith." *Id.* (quoting *Cox*, 576 F.2d at 1312). Indeed, "[s]o long as the court has no reason to question the good faith of the agency, the court is entitled to accept the credibility of the affidavits." *Id.* (quoting *Cox*, 576 F.2d at 1312); *see also Dubuque v. U.S. Dep't of the Air Force*, No. 4:16 CV 1244 RWS, 2017 U.S. Dist. LEXIS 183092, at *9 (E.D. Mo. Nov. 6, 2017) ("An agency may use affidavits to explain why an exemption applies, which courts will accept as credible in the absence of bad faith.").

Plaintiffs contend that the Barnes Declaration is insufficiently detailed to allow the Court to meaningfully review the IRS's withholding decisions. First, they argue that it fails to address the extent of the redactions and whether the IRS reasonably segregated nonexempt from exempt materials. (*See* Pls.' Reply at 7.) Second, they argue that the Barnes Declaration is replete with conclusory statements. (*Id.* at 8-10.) For example, they

argue that Barnes's characterization of the IRS's techniques and procedures as "unique authentication techniques and procedures" is too conclusory to assist the Court in deciding whether Exemption 7(E) applies. (*Id.* at 8.) They further argue that the Barnes Declaration simply parrots the statutory language without adequate explanation. (*Id.* at 9-10.)

The Court disagrees. First, it is clear that the IRS carefully reexamined the previously redacted portions of the text, and decided to release certain portions of that text. Nonetheless, it continued to withhold certain other portions of the text because the IRS remains persuaded that they reveal law enforcement techniques and procedures. (*See* Barnes Decl. ¶¶ 2, 12.) These efforts demonstrate that the IRS made reasonable efforts to segregate exempt text from other text. Second, the Barnes Declaration is not too conclusory to deprive the Court of its ability to conduct a *de novo* review of the IRS's withholding decisions. It specifies that the five redactions at issue all describe "specialty situations" where the IRS takes certain unique investigative steps to authenticate a caller. (*See id.* ¶¶ 34-37.) Consequently, the Court finds that *in camera* review is not warranted.

Plaintiffs also contend that the Barnes Declaration contains evidence of bad faith and thus *in camera* review is warranted. (Pls.' Reply at 10-12.) First, they note that, at one point in her declaration, Barnes identified the IRS as a "law enforcement agency," even though the IRS has both administrative and law enforcement functions. (*Id.* at 10-11.) Further, Plaintiffs argue that Barnes's characterization of the redacted material is at odds with the location of the redacted materials within the IRM. (*Id.* at 11-12.) Specifically, they assert that it is unlikely that any of the IRS's "techniques or procedures for law enforcement

investigations or prosecutions" would reside in a subpart entitled "Third Party Authentication" within Part 21, entitled "Customer Account Services." (*Id.*)

The Court disagrees. There is simply no evidence of bad faith on the part of the IRS. Because "the court has no reason to question the good faith of the [IRS], the court is entitled to accept the credibility of the [IRS's] affidavit[]" and declines to conduct an *in camera* review. *Peltier*, 563 F.3d at 759 (citing *Cox*, 576 F.2d at 1312).

### E. Segregability

Under the FOIA, even when a FOIA exemption applies, "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "In every case, the district court must make an express finding on the issue of segregability." *Missouri Coal. for Env't Found. v. U.S. Army Corps of Engineers*, 542 F.3d 1204, 1212 (8th Cir. 2008) (citations omitted). The agency bears the burden of showing that the exempt portions of the documents are not segregable from the non-exempt material. *Id.* (citation omitted). In addition, the agency's justification "must be relatively detailed, correlating specific parts of the requested documents with the basis for the applicable exemption." *Id.* (citation omitted).

Here, the Court finds that the IRS has not withheld any segregable, nonexempt material. As evidenced by the Barnes Declaration, the IRS has reviewed all responsive records, including the redacted portions of text at issue, and even released two previously withheld portions, in an effort to appropriately segregate the exempt material that falls

within Exemption 7(E) from the nonexempt materials. (*See* Barnes Decl. ¶¶ 2, 12.) Therefore, the Court is satisfied that the IRS has met its burden to segregate.

## IV. CONCLUSION

Based on the foregoing, and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion for Summary Judgment [Doc. No. 28] is **GRANTED**; and

2. Plaintiffs' Cross Motion for Summary Judgment [Doc. No. 34] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 11, 2021                        s/Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                    United States District Judge